UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES GILKESON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 3:09-CV-100 CAN |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On March 12, 2009, Plaintiff, Charles Gilkeson ("Gilkeson"), filed a complaint in this Court seeking judicial review pursuant to 42 U.S.C § 405(g). On February 19, 2010, Gilkeson's opening brief was filed. On June 4, 2010, Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), filed his response brief. On June 17, 2010, Gilkeson filed his reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.    PROCEDURE**

On October 18, 2005, Gilkeson applied for Supplemental Security Income (SSI) alleging disability since September 1, 1989. Gilkeson's claims were denied initially and upon reconsideration. On March 7, 2008, Gilkeson appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). On June 25, 2008, the ALJ issued a decision finding Gilkeson not disabled. As a result, Gilkeson did not qualify for benefits. On January 9, 2009, the Appeals Council denied review, making the ALJ's decision the final decision of the

1

Commissioner. 20 C.F.R. § 416.1481. On March 12, 2009, Gilkeson filed and appeal of the Commissioner's decision in this Court. This Court may enter a ruling in this matter pursuant to 42 U.S.C. § 405(g).

## II. ANALYSIS

### A. Facts

Gilkeson was born on July 12, 1957. Gilkeson was 32 years old on the alleged onset date and 50 years old at the time of the hearing. Gilkeson has a high school education and past relevant work as a construction worker. He has not engaged in substantial gainful activity since October 18, 2005.

#### 1. Medical Evidence

##### a. Gilkeson's physical impairments

In 1989, Gilkeson sustained an injury to his left upper arm and underwent surgery. However, records regarding the cause of this injury are not part of the administrative record. On March 26, 2003, Gilkeson received treatment from James Serwatka, M.D., for complaints of left arm numbness and limited arm mobility. Gilkeson continued to receive treatment from Dr. Serwatka through July of 2003.

On December 12, 2005, Gilkeson was examined by Ralph Inabnit, M.D.. Dr. Inabnit found Gilkeson's grip strength to be 4/5 on the right and 3/5 on the left. Dr. Inabnit noted that Gilkeson had normal range of motion in his upper extremities, normal fine finger manipulation and no evidence of severe motor loss or atrophy in Gilkeson's left upper extremity. Dr. Inabnit noted that Gilkeson had some sensory loss in the upper left extremity.

On January 5, 2006, J. Lavallo, M.D., a state agency physician, completed a physical

RFC assessment. Gilkeson was found to be capable of light work with only occasional climbing of ladders, ropes, or scaffolds and frequent, but not continuous, handling with his left upper extremity.

On January 31, 2006, Dr. Serwatka completed a form assessing Gilkeson's health. Dr. Serwatka opined that Gilkeson was precluded from employment because of a left upper extremity injury, unexplained weight loss and depression. Dr. Serwatka found Gilkeson to have limitations in his ability to push/pull, have meaningful and productive contacts with others and carry out simple and complex instructions.

On June 29, 2007, Gilkeson saw orthopedic surgeon, Scott Fielder, M.D.. Dr. Fielder diagnosed Gilkeson with probable left carpal tunnel syndrome, probable bilateral rotator cuff pathology, and left lateral epicondylitis. An EMG nerve conduction study on July 18, 2007 was normal. On August 3, 2007, Gilkeson received an MRI which revealed mild abnormalities in Gilkeson's shoulders. Dr. Fielder prescribed Vicodin for Gilkeson to manage his pain. In September of 2007, Dr. Fielder prescribed physical therapy and a TENS[1] unit for Gilkeson. Finally, in March of 2008, Dr. Fielder completed a questionnaire indicating that Gilkeson was capable of performing a wide range of activities.

On March 26, 2008, Clayton Alexander, D.O., Gilkeson's current physician, opined that Gilkeson could carry less than 10 pounds, stand/walk for less than two hours and had limited ability to push or pull. Dr. Alexander also felt that Gilkeson should never climb, kneel, crouch crawl, or stoop because of right hip pain, and was limited in his ability to reach and handle.

---

[1] A TENS unit (transcutaneous electrical nerve stimulation) decreases pain by applying a small electrical current to the skin. The Merck Manual, 1776 (18th ed. 2006).

b. Gilkeson's mental impairments

On March 31, 2005, Gilkeson received treatment from S.L. Prasad Babu, M.D., the staff Psychiatrist at the Swanson Center. Dr. Babu noted that Gilkeson appeared to be extremely anxious, nervous, tense, sad and depressed. Dr. Babu and Imo Jeanne Yoder-Johnson, L.C.S.W., completed a report at the end of 2005 which noted that Gilkeson's GAF[2] score ranged between 45-55 and that Gilkeson suffers from depression, fatigue and difficulty concentrating. The report also noted that Gilkeson had been given samples of Lexapro to manage his depression.

On January 4, 2006, J. Larsen, Ph.D., completed a Psychiatric Review Technique form ("PRTF") and a mental residual functional capacity ("RFC") assessment. Dr. Larsen found Gilkeson to have moderate difficulties in maintaining concentration, persistence or pace. However, Dr. Larsen opined that Gilkeson was capable of performing simple, repetitive tasks.

Gilkeson was discharged from mental health counseling at the Swanson Center in December of 2006 for failure to show up. Subsequently, Gilkeson began treatment with the Madison Center. In June of 2007, Dr. Gegeshidze indicated that Gilkeson was not suicidal and had no severe anxiety. Dr. Gegeshidze assigned Gilkeson a GAF score of 67. Between July 2007 and October 2007, Gilkeson's GAF score improved to 70 while taking the medication Citalopram.

2. Gilkeson's testimony before the ALJ

During the March 7, 2008 hearing, Gilkeson testified that he lived with his girlfriend who helped take care of him. Gilkeson also testified that he experienced numbness in his left hand,

---

[2] GAF scores represent on a single day and individual's overall level of functioning, including symptom severity. The higher the GAF score, the less severe the symptoms and the individual will have a higher level of functioning.

was unable to focus or concentrate, unable to walk more than a block and could only stand for 10-12 minutes and sit for 10-15 minutes. At the time of the hearing, Gilkeson was taking Celexa, Vicodin and used a TENS unit to manage his pain.

Gilkeson stated that he could not drive. Gilkeson acknowledged that he could dress and bathe but stated that it took him some time. Gilkeson also stated that his girlfriend did all of the housework because he had difficulty cooking and cleaning. In his free time, Gilkeson testified that he often goes to the library to check out documentaries.

3. Testimony of the Vocational Expert

Dr. Leonard Fisher, a vocational expert, testified at the hearing. Dr. Fisher was asked by the ALJ to consider a hypothetical person with Gilkeson's:

> education, background and work history with a limitation to light work with simple, repetitive tasks and no more than occasional climbing, no more than frequent balancing, stooping, kneeling, crouching, and crawling, and no continuous handling and fingering with the left upper extremity.

See. Tr. 409. Dr. Fisher found that the hypothetical individual would be incapable of performing Gilkeson's past relevant work. However; Dr. Fisher opined that the same hypothetical individual would be able to perform other work as an information officer, office helper, parking lot attendant, light construction, driver auto manufacturing, cleaning worker, usher, and lot attendant. Dr. Fisher then stated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT").

4. The ALJ's decision

On June 25, 2008, the ALJ issued a decision regarding Gilkeson's claim for SSI benefits and found Gilkeson to not be disabled. First, the ALJ found that Gilkeson had not been engaged in substantial gainful activity since October 18, 2005. Next, the ALJ found that Gilkeson had the

5

severe impairments of bilateral shoulder problems, status post left upper extremity injury and depression. Third, the ALJ found that Gilkeson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. 20 C.F.R. § 404 subpt. P, app. 1. The ALJ then found that Gilkeson had the RFC to perform light work with certain additional limitations. Specifically, the ALJ found that Gilkeson is frequently able to balance, stoop, kneel, crouch, and crawl. However, the ALJ determined that Gilkeson is not able to do any continuous handling or fingering with his left upper extremity and Gilkeson is not able to climb more than occasionally. In addition, the ALJ determined that Gilkeson is only able to perform simple, repetitive tasks. Next, the ALJ found that Gilkeson could not perform any past relevant work. Finally, the ALJ found that, based upon the testimony of the vocational expert and the RFC, jobs exist in the national economy that Gilkeson could still perform. As a result, the ALJ found Gilkeson to be not disabled.

  B. <u>Standard of Review</u>

  The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. <u>See</u> 42 U.S.C § 405(g). <u>See</u> also <u>Briscoe v. Barnhart</u>, 425 F.3d 345, 351 (7th Cir. 2005); <u>Haynes v. Barnhart</u>, 416 F.3d 621, 626 (7th Cir. 2005); <u>Golembiewski v. Barnhart</u>, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. <u>Haynes</u>, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. <u>Lopez v. Barnhart</u>, 336 F.3d 535, 539 (7th Cir.

2003). However, an ALJ's legal conclusions are reviewed *de novo*. Haynes, 416 F.3d at 626.

    C.    <u>Gilkeson's motion for summary judgment or remand</u>

To be entitled to adult Social Security benefits under 42 U.S.C. §§ 423, 1321(a), Gilkeson must establish that he was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's RFC leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpt. P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which in turn

7

is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

Gilkeson asserts three arguments regarding the ALJ's adult disability analysis. First, Gilkeson argues that the ALJ failed to make a credibility finding. Second, Gilkeson asserts that the ALJ's RFC assessment is fundamentally flawed and is not based on substantial evidence. Third, Gilkeson contends that the ALJ's step five determination is erroneous and is not supported by substantial evidence.

      1.      <u>Substantial evidence supports the ALJ's credibility finding</u>.

Gilkeson additionally argues that the ALJ failed to make a credibility assessment which resulted in reversible error. Gilkeson contends that an ALJ must indicate his reasons for the weight afforded to Gilkeson's testimony.

Since an ALJ is in a special position where he can hear, see and assess witnesses, his credibility determinations are given special deference; and, ass a result, his credibility determinations will only be overturned if they are patently wrong. <u>Jens v. Barnhart</u>, 347 F.3d 209, 213 (7th Cir. 2003); <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001). <u>See</u> <u>also</u> <u>Porchska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006) (holding "[o]nly if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported...cant the finding be reversed."). However, as a bottom line, Social Security Ruling 96-7p requires and ALJ to consider the entire case record and articulate specific reasons to support his credibility finding. <u>Golembiewski v. Barnhart</u>, 322 F.3d 912, 915 (7th Cir. 2003);

Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an individuals allegations have been considered or that the individual's allegations are not credible. Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2001); S.S.R. 96-7p. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski, 245 F.3d at 887; S.S.R. 96-7p.

Gilkeson argues that the ALJ failed to make a credibility determination. However, a review of the ALJ's opinion reveals that the ALJ did make a credibility determination and found the testimony of Gilkeson to be not credible. Regarding Gillkeson's complaint of his physical limitations, the ALJ stated "there is no reason to find the claimant's allegations of not being able to stand, sit, or walk for more than fifteen minutes credible." Tr. at 26. The ALJ then discussed the reasons for this credibility determination. First, the ALJ reviewed the medical evidence in the record and found no evidence of an abnormal finding regarding Gilkeson's hips. Second, the ALJ determined that the record showed that, while Gilkeson had minimal abnormalities in his left upper extremities, the evidence did not show that they were disabling. See Tr. at 26. Similarly, regarding Gilkeson's stated mental limitations, the ALJ noted that Gilkeson's mental impairments are not severe enough to be completely disabling. In support the ALJ noted that the record evidence only showed depression and minor impairments in concentration, persistence and pace. Thus, the ALJ concluded that Gilkeson's claimed physical and mental limitations were inconsistent with Gilkeson's testified limitations and were, therefore, not credible.

The discussion by the ALJ is sufficiently articulated for this Court to find the ALJ did in fact make a credibility determination and for this Court to understand the ALJ's reasons for the

9

credibility determination. As such, this Court finds the ALJ's credibility determination substantially supported.

>    2. The ALJ's RFC determination was proper and supported by substantial evidence in the record.

Gilkeson contends that the ALJ's RFC assessment was improper because the ALJ improperly assigned greater weight to the opinions and treatment notes of the State Agency examiners than Gilkeson's treating physicians. In particular, Gilkeson argues that the ALJ's decision to discredit the opinions of Dr. Serwatka and Dr. Alexander was unsubstantiated.

An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and if it is consistent with other substantial evidence in the record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 416.927(d)(2); S.S.R. 96-2p. More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 416.927(d)(2); Clifford, 227 F.3d at 870. Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Clifford, 227 F.3d at 870. When evidence in opposition to the presumption is introduced - when "well supported contradicting evidence" is submitted - the rule drops out and the treating physician's evidence becomes just one more piece of evidence that the ALJ must consider. Hofslien, 439 F.3d at 376-377. While the ALJ is not required to award a treating physician controlling weight, the ALJ must, at a minimum, sufficiently articulate his reasoning for not doing so. Id.

Gilkeson argues that the RFC determination was improper because the ALJ did not give sufficient weight to that of his treating physicians. However, this Court notes that the ALJ

thoroughly discussed the opinions of Dr. Serwatka and Dr. Alexander and sufficiently articulated his reasons for discrediting Dr. Serwatka and Dr. Alexander's opinions. As to both, the ALJ noted that Gilkeson saw Dr. Serwatka and Dr. Anderson on an infrequent basis for a variety of minor complaints. In contrast, the ALJ noted that the State Agency physicians were based on actual examinations and were more consistent with Gilkeson's shoulder specialist, Dr. Fielder. In addition, the ALJ noted that there was no evidence of a hospitalization in the record. As a result, the ALJ found that the opinions from the State Agency doctors were more consistent with the record then that of Gilkeson's current physicians.

Specifically, the ALJ discredited the opinions of Dr. Serwatka because the ALJ found them to be internally inconsistent. In support, the ALJ noted that Dr. Serwatka completed a form which stated that Gilkeson's depression, weight loss, and weakness in his left upper extremity precluded him from employment. However, the ALJ noted that Dr. Serwatka's treatment records only indicated a restriction on Gilkeson's ability to push/pull. See Tr. at 25. As such, given the inconsistencies, the ALJ opined that Dr. Serwatka's opinion was not entitled to controlling weight.

The ALJ similarly found Dr. Alexander's statements to be inconsistent as well. In support, the ALJ noted that Dr. Alexander completed a form in March 2008, where he opined that, due to Gilkeson's chronic hip and shoulder pain, as well as his carpal tunnel syndrome, Gilkeson was unable to sit, stand, walk, lift, etc. See Tr. at 26. However, the ALJ examined the treatment records from Dr. Alexander and found that they "failed to reflect even a complaint of hip pain or a diagnosis of carpal tunnel syndrome." Tr. at 26. Therefore, the ALJ concluded that Dr. Alexander's opinion should also be discounted due to internal inconsistencies.

11

Because an ALJ may discount a treating physician's opinion when it is inconsistent, this Court concludes that the ALJ's rationale for not affording Dr. Serwatka and Dr. Alexander's opinions controlling weight to be sufficiently articulated. Thus, this Court finds that the ALJ's RFC determination was proper.

      3.     <u>The ALJ's step five determination is not erroneous and is supported by substantial evidence</u>.

Finally, Gilkeson contends that the ALJ erred at step five. Specifically, Gilkeson argues that the hypothetical question to the vocational expert was incomplete because it failed to include all of his limitations.

When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record. <u>See</u> <u>Stewart v. Astrue</u>, 561 F.3d 679 (7th Cir. 2009); <u>Young v. Barnhart</u>, 363 F.3d 995, 1003 (7th Cir. 2004); <u>Indoranto v. Barnhart</u>, 374 F.3d 470, 474 (7th Cir. 2004). More specifically, the question must account for documented limitations of "concentration, persistence or pace." <u>Stewart</u>, 561 F.3d at 684; <u>Young</u>, 362 F.3d at 1004. However, an ALJ may use "words describing work, such as unskilled, simple, repetitive, routine" in hypothetical questions to the VE "if a doctor used the descriptive language to describe what work a claimant can perform in spite of his limitations." <u>Martinez v. Astrue</u>, 2010 WL 1292491 (N.D.IL. 2010); <u>Coots v. Astrue</u>, 2009 WL 3097433 at *8 (C.D.IL. 2009). <u>See</u> also <u>Johansen v. Barnhart</u>, 314 F.3d 283, 288-89 (7th Cir. 2002).

Gilkeson argues that the ALJ's hypothetical questions to the VE were incomplete which led to an erroneous step five determination. Specifically, Gilkeson argues that the ALJ's hypothetical limiting Gilkeson to "simple, repetitive tasks" was errant. This Court disagress. In this case, J. Larsen, Ph.D., completed a PRTF form and a mental RFC assessment, finding

12

Gilkeson to have moderate difficulties in maintaining concentration, persistence or pace. Dr. Larsen translated this difficulty into an assessment that Gilkeson was capable of performing simple, repetitive tasks. The hypothetical to Dr. Fisher, the vocational expert, included the phrase "simple, repetitive tasks" to account for Gilkeson's mental limitations. Ordinarily, an ALJ may not impute these terms to account for a limitation unless a doctor used the same language to describe work a claimant could perform. This is what occurred in this instance. Dr. Larsen made an RFC assessment and translated his assessment into the phrase "simple, repetitive tasks. The ALJ then incorporated this limitation into the hypothetical. As such, this Court finds no error in the hypothetical question. This ruling is consistent with the ruling in Martinez, 2010 WL 1292491.

As a result, this Court concludes that substantial evidence supports the ALJ's hypotheicals, the ALJ's reliance on the VE's testimony, and the ALJ's finding that Gilkeson could perform a significant number of jobs in the national economy.

### III. CONCLUSION

For the reasons stated, this Court concludes that the ALJ's findings are supported by substantial evidence and sufficiently articulated. As a result, this Court **DENIES** Gilkeson's motion for remand. [Doc. No. 10]. Accordingly, this Court **AFFIRMS** the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Clerk is **INSTRUCTED** to **TERM** the case and enter judgment in favor of the Commissioner.

**SO ORDERED**.

Dated this 4th Day of August, 2010.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge